

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GEORGE TURNER

      PLAINTIFF            INDEX #    15-cv-74 NG SMG

    -AGAINST-             DATE PURCHASED   1/8/15

MEGAN MELE, NEW YORK CITY POLICE
DEPARTMENT, CITY OF NEW YORK,       AMENDED
DETECTIVE DARU DONAWA,                VERIFIED COMPLAINT WITH
DETECTIVE THOMAS HANDLEY           JURY DEMAND

      DEFENDANTS

---

## JURISDICTION

Jurisdiction lies in the United States District Court Eastern District of New York because defendants maintain their principal place of business in Queens, New York, and this case involves a federal question; to wit, 42 USCS Section 1983.

## DEFENDANT'S COMMITTED MALICIOUS PROSECUTION AND FALSE ARREST UNDER 42 UNITED STATES CODE SECTION 1983

1. Plaintiff George Turner was previously in a relationship with Megan Mele, who was his girlfriend.

2. Mr. Turner and Ms. Mele have a child in common.

3. Plaintiff did not desire to continue in a relationship with Ms. Mele.

4. Ms. Mele began obsessing over plaintiff and began stalking him at his home and place of work; threatening plaintiff's girlfriend that she would file a false police report against her and have her arrested if she continued to have a relationship with plaintiff.

5. Although plaintiff clearly and unequivocally advised Ms. Mele he did not want her as a "girlfriend," Ms. Mele's behavior became more and more akin to a "fatal attraction."

6. After plaintiff terminated his relationship with Ms. Mele she came to his home on July 25, 2013 expecting to be taken on a date.

7. Plaintiff refused to answer the door, and Ms. Mele became violent after plaintiff refused to come out of his house.

8. On that date Megan Mele retrieved a brick and smashed the windshield on Mr. Turner's car in retaliation for his refusal to leave his home and take her on a date.

9. Plaintiff filed a complaint with the NYPD and Mele was arrested for criminal mischief and prosecuted.

10. Mele contacted plaintiff and promised she would get even with him for having her arrested.

11. On or about November 21, 2013 Megan Melee filed a false police report, causing plaintiff to be arrested

12. This report was in retaliation for plaintiff reporting Ms Mele to the police and causing her to be arrested for smashing in his window with a brick.

13. Mele lied to the police and claimed that George Turner had pushed her head into a seat belt buckle causing swelling and substantial pain to her head; strangled her and shoved her into a door; and threatened her on the phone.

14. There was absolutely no substantiation for any of these allegations; to wit, there were no medical records to corroborate Mele's fabricated story; no evidence of bruising or contusion; no witnesses; no photos of injury; and no phone records to corroborate her claims of aggravated harassment via the telephone.

15. There was, however, a documented record at the NYPD that plaintiff had recently had Ms Mele arrested for criminal mischief- prior to her report about plaintiff.

16. Despite the overwhelming lack of evidence to support any of Mele's false accusations, and Mele's documented arrest history; plaintiff was still contacted by Daru Donawa to appear at the precinct.

17. Plaintiff arranged a time he would appear at the precinct to meet with Detective Daru Donawa.

18. Prior to plaintiff's scheduled meeting with Detective Donawa plaintiff was contacted by Mele, who admitted to plaintiff she had made a false police report that he had attacked her, strangled her and threatened her. Plaintiff knew the importance of acquiring evidence that Mele had filed a false police report prior to meeting with Detective Daru Donawa.

19. Plaintiff engaged Mele in a subsequent conversation- this time tape recording the communication.

20. On this tape recording Ms. Mele admitted her accusations against plaintiff were in retaliation for him having her arrested, in relation to her using a brick to demolish his car windshield.

21. Mele admitted she personally threw a brick through plaintiff's car.

22. Mele warned plaintiff that any further disclosure by him to the police of her criminal activity would be met with retaliation. Specifically, Mele threatened to blow up George Turner's car the next time he made a criminal complaint against her.

23. When plaintiff appeared at the precinct he advised Detective Daru Donawa of Melee's criminal history.

24. Plaintiff advised Detective Donawa that Melee had been arrested for criminal mischief for damaging his car windshield with a brick.

25. Critically, plaintiff played the tape recordings of his communication with Mele, whereby she admitted to the brick throwing incident and admitted that her false police report about

plaintiff attacking her and threatening her over the phone, was in retaliation for plaintiff having her arrested.

26. Despite the fact that plaintiff presented Detective Donawa with overwhelming evidence that plaintiff was innocent of the crimes Mele had alleged he arrested plaintiff anyway.

27. This arrest of the plaintiff was without probable cause because there was not a scintilla of corroboration for Mele's allegations. Specifically, there were no medical records to confirm Mele's supposed injuries from being beaten and strangled; no photos to substantiate the existence of injury; no phone records to corroborate Mele's claim of aggravated harassment; no audio recordings of these supposes threatening phone calls; and no inculpatory statements made by plaintiff.

28. Moreover, Mele's criminal history called her credibility into question.

29. Probable cause was also lacking because plaintiff played the audio recordings of Mele to Detective Donawa (admitting to smashing plaintiff's car with a brick; that she was retaliating by filing a report against plaintiff; and that she would blow up plaintiff's car the next time he reported her conduct to the police).

30. Moreover, Detective Donawa indicated at the time of arrest that Mele was well known in the precinct for filing reports against men.

31. Hence, there was no probable cause for plaintiff's arrest and no reasonable officer in this Detective's position would have thought there was probable cause-especially when a detective is in possession of exculpatory evidence and has a complainant whose veracity is highly questionable under the circumstances.

32. The 4th and 14th amendment right to liberty and right to be free from unlawful seizures is clearly recognized in the Second Circuit. Moreover, the right to be free from false arrest, and

malicious prosecution, under 42 USCS 1983 and otherwise, is a right clearly recognized in the Second Circuit.

33. Detective Donawa was a state actor, acting under the color of state law, who violated plaintiff's Fourth Amendment and Fourteenth amendment right of plaintiff to be free from unlawful seizures and unlawful deprivations of liberty; and who violated 42 USCS Section 1983 as it relates to malicious prosecution and false arrest.

34. As a result of this arrest, an order of protection was issued against plaintiff during the pendency of the criminal proceeding.

35. The criminal case ultimately terminated in plaintiff's favor, with the case being dismissed.

36. In May 2014 Ms. Mele went to plaintiff's worksite and began taking pictures of him while he was on break and sitting in his car.

37. Plaintiff observed Mele stalking him and photographing him in front of his work location and began videotaping Mele with his phone, to prove she was stalking him at his job (and sensing she may be gearing up to file another false report).

38. Plaintiff kept this video tape evidence as protection in case she filed any future false reports.

39. Shortly after stalking and photographing plaintiff at his job, Mele filed another false police report against plaintiff, stating he had followed her in his car, in violation of an order of protection (relating to the dismissed case mentioned above), and was honking at her.

40. Detective Thomas Handley was assigned to the case.

41. Detective Thomas Handley contacted plaintiff to come into the precinct.

42. Plaintiff explained to Detective Handley the history of his relationship with Mele; her pattern of stalking him and his new girlfriend; the fact that she was making this report in retaliation

for plaintiff having her arrested for criminal mischief, and the fact that he was in front of his job at the time she claims he was following her.

43. Most importantly, plaintiff played the video showing him sitting stationary in his car while Mele stalked him at the location in front of his workplace, and took pictures of him while he sat in his stationary car.

44. Despite this evidence of innocence, Detective Handley arrested plaintiff anyway.

45. There was no probable cause for this arrest, as plaintiff showed video footage establishing his innocence; and there was no probable cause for this arrest because Mele's veracity was severely questionable in light of the circumstances. (These circumstances included the fact that plaintiff played the tape recording and video recording of Mele both confessing to criminality and retaliation and stalking him at his workplace).

46. This criminal case terminated favorably to the plaintiff and was also dismissed.

47. Detective Hadley was a state actor, acting under the color of state law when he violated plaintiff's 14th amendment liberty right and 4th amendment right to be free from unlawful seizures, as well as plaintiff's rights to be free from malicious prosecution and false arrest under 42 USCS Section 1983..

48. Detective Hadley had no probably cause to arrest plaintiff and no reasonable law enforcement official in his shoes would have believed probably cause existed under the foregoing circumstances.

49. Defendants Hadley and Donawa intended to confine the plaintiff.

50. The plaintiff was aware of the resulting confinement.

51. The plaintiff did not consent to the confinement.

52. The confinement was not otherwise privileged.

53. Defendants Hadley and Donawa of the New York City Police Department and the City of New York, engaged in the commencement or continuation of a criminal proceeding against the plaintiff by personally commencing this proceeding.

54. The termination of both criminal proceedings mentioned above were in favor of the accused

55. There was an absence of probable cause for the criminal proceeding.

56. Both defendants willfully refrained from telling the prosecution all the exculpatory information plaintiff possessed when they arrested plaintiff and forwarded his paperwork to the DA's office to commence prosecution. This constituted actual malice on the part Hadley and Donawa.

57. Plaintiff suffered a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights; to wit, he was subjected to a court order of protection; prohibited from going anywhere near the complainant and had bail set.

58. Both Detectives Donawa and Hadley violated plaintiff's civil and constitutional rights under 42 USC Section 1983.

59. Defendants have injured plaintiff in that their conduct has caused him severe stress and mental anguish and economic damages in the form of lost wages and attorneys fees. Moreover, their conduct was malicious in that they arrested plaintiff, despite knowing of the existence of exculpatory evidence. Hence, they are liable for punitive damages.

MALICIOUS PROSECUTION/ABUSE OF PROCESS CLAIM AGAINST MEGAN MELE

60. Plaintiff repeats and realleges all of the aforementioned allegations.

61. Ms. Mele willfully and maliciously made false police reports against plaintiff knowing they were false and causing him to be arrested.

62. She did this out of pure spite and malice because plaintiff did not desire to continue a romantic relationship with her; and in retaliation for plaintiff having her arrested.

63. Mele has caused plaintiff to be arrested repeatedly and plaintiff has been confined as a result.

64. Plaintiff has not consented to this confinement and it is not otherwise privileged.

65. Plaintiffs arrest was based on lies told by Mele and was not, therefore, based on probable cause.

66. On or about January 2015 Megan Mele willfully and maliciously made a false accusation with the New York Police Department; to wit, Detective Maribel Roman of the Special Victims Squad, accusing the plaintiff of raping her.

67. Detective Maribel Roman demanded plaintiff surrender himself for arrest, based on the accusations of Megan Mele.

68. Plaintiff, through counsel, produced evidence to Detective Roman of the New York Police Department that Ms. Mele was a habitual liar who had made a false rape accusation against plaintiff- prior to surrendering himself for arrest.

69. Maribel Roman thereafter determined it would not be necessary for plaintiff to surrender himself, as he would not be arrested for the rape of Megan Mele.

70. The criminal accusation against plaintiff for rape, filed by Megan Mele, was deemed unfounded by Detective Maribel Roman.

71. Detective Roman closed the case against George Turner, finding there was no evidence he had raped Megan Mele.

72. All criminal proceedings, stemming from accusations filed by Mele, have terminated in plaintiff's favor and resulted in dismissals or the criminal cases being closed by the NYPD as being unfounded.

73. All the criminal cases and accusations initiated by Mele against plaintiff have been done out of spite and malice, with knowledge the complaints were false.

74. Mele used regularly issued criminal process with intent to harm plaintiff without excuse of justification to obtain a collateral objective outside the legitimate ends of process; to wit, to get even with plaintiff for having a relationship with a woman other than Mele.

75. Defendant has injured plaintiff in that her conduct has caused him severe stress and mental anguish and economic damages in the form of lost wages and attorneys fees. Moreover, their conduct was malicious. Hence, she is liable for punitive damages.

WHEREFORE, plaintiff seeks on his first cause of action 5 million dollars in emotional damages; $10,000 compensatory damages; and 5 million dollars punitive damages. On plaintiff's second cause of action he seeks 5 million dollars in emotional damages; $10,000 compensatory damages; and 5 million dollars punitive damages.

Dated: August 5, 2015
New York, New York

TAMARA HARRIS
The Law Office of Tamara M. Harris
111 Broadway, Ste 706
New York, NY 10006
(212) 334-1050

## VERIFICATION

I, George Turner, hereby depose and swear under penalty of perjury that the facts contained in the Amended Verified Complaint to be true to he best of my knowledge.

_____
George Turner

Sworn to before me this 5Th day of August 2015

_____
NOTARY PUBLIC

H. BENJAMIN PEREZ
Notary Public, State of New York
No. 02PE6166223
Qualified in Queens County
Commission Expires May 21, ~~2015~~ 2019