UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GEORGE TURNER,

                **Plaintiff,**

   -against-

MEGAN MELE, *et al.*,

                **Defendants.**

------------------------------------------------------------------x

OPINION & ORDER

15-CV-00074 (NG)(SJB)

**GERSHON, United States District Judge:**

Plaintiff George Turner brings this action alleging false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983 against the following defendants: the City of New York (the "City"); the New York City Police Department ("NYPD"); Detective Daru Donawa; Detective Thomas Handley, and Megan Mele. All defendants, except Mele, now move for summary judgment as to both of plaintiff's claims on the ground that probable cause existed for the arrest and prosecution or that arguable probable cause existed such that defendants are entitled to qualified immunity. For the reasons set forth herein, I grant defendants' motion in its entirety.

**I.    Facts**

    **A.    The Two Arrests**

Plaintiff's claims arise from two arrests: one on November 21, 2013, and the other on May 28, 2014. Several days prior to the first arrest, on November 16, 2013, Megan Mele, the mother of plaintiff's child, went to the 100th Precinct to file a complaint against plaintiff in which she alleged three separate incidents: (1) on July 4, 2013, while having an argument with plaintiff, he slammed her head against the interior portion of a car, causing her bruising and pain; (2) on September 16, 2013, plaintiff choked her and then slammed her to the ground; and (3) on November 12, 2013, while on the phone with plaintiff, plaintiff stated that, if he could kill Mele

1

and get away with it, he would. Detective Donawa was assigned Mele's complaint, and he interviewed her at her home. On November 21, 2013, Donawa arrested plaintiff for assault with intent to cause physical injury, criminal obstruction of breathing, and aggravated harassment. The District Attorney ultimately dismissed these charges.

The second arrest arose out of an order of protection issued to Mele against plaintiff on November 22, 2013. Plaintiff was served with the order of protection on the date it was issued. On May 14, 2014, Mele appeared at the 75th precinct and filed a complaint in which she stated that, earlier that day, plaintiff had violated the order of protection. On May 16, Detective Handley was assigned Mele's complaint. When Handley spoke to Mele on the telephone, she stated that, while she was walking to the train station, she observed plaintiff sitting in his vehicle, that he shouted at her from his car, honked his horn at her, and called her telephone. On May 28, 2014, Handley arrested plaintiff for violating the order of protection. Mele also was arrested for her actions stemming from the May 14, 2014 incident by another officer in the same precinct—Detective Powell—because she also was subject to an order of protection requiring her to stay away from plaintiff. The District Attorney ultimately dismissed the charge against plaintiff.

### B. Plaintiff's Allegedly Exculpatory Evidence

The parties agree regarding the above-stated facts of the two arrests—that plaintiff was arrested based on complaints filed by Mele, who was a complaining victim. The dispute in this case lies with the evidence plaintiff provided to the officers prior to each arrest. Plaintiff argues that he presented sufficient facts to the detectives to call into question the veracity of Mele's complaints such that it was unreasonable for the defendants to have arrested him. Although defendants contest that plaintiff presented them with this allegedly exculpatory information, they

also argue that, even taking into account this information, defendants nonetheless had probable cause to arrest plaintiff.

### 1. November 21, 2013 Arrest

Prior to his first arrest in November, plaintiff met with Donawa and claims that he provided Donawa with multiple pieces of exculpatory evidence, including: (1) admissions by Mele that she threw a brick through plaintiff's window; (2) text messages from the days surrounding the alleged assaults in July and September that call into question her allegations; (3) photos from the day of the alleged assault in July showing no injuries to Mele; (4) text messages where Mele threatens to file a false rape allegation; and (5) phone records proving plaintiff never called Mele on November 12, 2013 (the date she alleges he harassed her over the phone). Plaintiff also notes that Mele claimed that her cousin witnessed the September assault, but refused to disclose his identity to Donawa. And plaintiff testified that Donawa acknowledged Mele was lying when Donawa stated to plaintiff, "I didn't fuck this crazy bitch. You did. I know she's lying, but you will get arrested anyway. You chose to stick your dick in this crazy bitch. Not me. You're going to get arrested." Turner Dep. at 112-113. Additionally, plaintiff highlights that Mele filed her complaint immediately after plaintiff filed a complaint against her for throwing a brick through his car window, of which Donawa was aware because he contacted the detective assigned to plaintiff's complaint against Mele. And Donawa acknowledged in a report summarizing his interview with Mele that her reason for filing her complaint months after the alleged incidents was because, he wrote, "she was advised by her personal (Paid) lawyer to file a police report for her past incidents since [plaintiff] had filed one."

### 2. May 28, 2014 Arrest

Prior to his second arrest, plaintiff had a phone conversation with Detective Handley on May 18, which he recorded. On that call, plaintiff informed Handley that the incident arose because Mele came to his place of work; plaintiff offered to show Handley a video recording of the incident at issue; and Handley stated that a judge would dismiss the case against plaintiff. Upon meeting Handley in person on May 28, 2014, plaintiff claims he further provided: (1) his cell phone records demonstrating he did not call Mele on the date at issue, as she alleged; (2) a letter from his employer, which confirmed the location of the incident was plaintiff's workplace and that plaintiff was on his lunch break at the time of the incident; (3) the name of an eyewitness who was working with plaintiff at the time of the incident; and (4) copies of flyers Mele was handing out at plaintiff's workplace that disparaged plaintiff. Plaintiff also contends that Handley knew, prior to arresting plaintiff, that another detective in the same precinct, Detective Powell, had found probable cause to arrest Mele for violating the order of protection against her as a result of the incident at issue.

## II. Discussion

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate if the movant demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "A dispute is not genuine unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Shiflett v. Scores Holding Co., Inc.*, 601 Fed. Appx. 28, 29 (2d Cir. 2015) (internal quotation omitted). A court is required to "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its

favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The moving party bears the burden of proof that no genuine issues of fact exist, but, once it satisfies this initial burden, the burden then shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rosenfeld v. Hostos Comty. Coll.*, 554 Fed. Appx. 72, 73 (2d Cir. 2014).

### B. False Arrest

Probable cause is a complete defense to false arrest, and it exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *See Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (internal quotation omitted); *Sullivan v. City of New York*, 690 Fed. Appx. 63 (2d Cir. 2017). "When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). While a prior relationship between the victim and the accused may give rise to a motive for a false accusation, "[o]ftentimes, the only eyewitnesses to domestic violence are the assailant and his or her victims. If police were obligated to discredit a victim's account of the events solely because of acrimonious history between the parties, these violent crimes would go virtually unprosecuted." *Romney v. Black*, 2017 WL 1317011, at *7 (E.D.N.Y. Mar. 31, 2017).

Here, there is no question that Mele was a putative victim who made complaints against plaintiff to the police and that Turner was the person against whom Mele made the complaints. Thus, unless there are circumstances that call Mele's veracity into question, there was probable

cause for plaintiff's arrests. Plaintiff argues that the evidence he provided to defendants did raise doubts as to her credibility, thus requiring further investigation to corroborate her claims before arresting him.

As noted above, there are two primary disputes in this case. First, whether plaintiff provided the alleged exculpatory evidence to the arresting officers. This is a factual dispute that a jury would have to decide. Accordingly, construing all disputes in plaintiff's favor on this motion, I assume that plaintiff did provide this information to the arresting officers. The second dispute is whether the arresting officers had probable cause to arrest plaintiff. As to the existence of probable cause and qualified immunity, these are questions of law for a court to decide. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court."). The same is true as to qualified immunity. "If there is no dispute about the material facts, the district court should assess the reasonableness of the defendants' conduct under the circumstances presented in order to determine on summary judgment whether the defendants are entitled to qualified immunity." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995).

In the below analysis, when determining whether probable cause existed, I consider the undisputed facts and, as to any facts that are disputed, I "construe all evidence in the light most favorable to the [plaintiff], drawing all inferences and resolving all ambiguities in [his] favor." *Dickerson*, 604 F.3d at 740.

### 1. November 21st, 2013 Arrest

The central inquiry here is whether plaintiff provided sufficient information to call Mele's credibility into question such that an officer "of reasonable caution" would no longer be justified

6

in believing "an offense ha[d] been . . . committed" by plaintiff. *Kass*, 864 F.3d at 206. Even after taking into account the information plaintiff provided to Donawa, there was nonetheless probable cause for his arrest.

*Kanderskaya v. City of New York*, 11 F. Supp. 3d 431, 437 (S.D.N.Y. 2014), *aff'd* 590 Fed. Appx. 112 (2d Cir. 2015), is instructive. In that case, at the motion to dismiss stage, plaintiff Kanderskaya alleged that the defendant falsely arrested her based on fabricated complaints by her husband. When Kanderskaya met with the arresting officer, she "denied making any threatening phone calls," tried to convince the officer that her husband was making false claims because she wanted a divorce, that her husband was the abusive one, "showed [the officer] text messages indicating that it was Kanderskaya who wanted the divorce," told the officer that she had arranged to live away from her regular home, and "identified third parties who would confirm this." *Kanderskaya*, 11 F. Supp. 3d at 434. "After hearing from Kanderskaya, [the officer] acknowledged that she was emotionally abused by her husband and had in fact tried to escape from him. However, [the officer] then proceeded to arrest Kanderskaya—without taking any efforts to further investigate the case—stating that it was Kanderskaya's word against her husband's." *Id.*

In upholding the district court's dismissal, the Second Circuit stated, "[t]hat Kanderskaya and her husband were experiencing marital discord did not require the officers to discount her husband's account, nor did Kanderskaya's protestations of innocence." *Kanderskaya*, 590 Fed. Appx. at 114. As the district court in *Kanderskaya* noted, "marital disputes can be chaotic and tumultuous . . . in some domestic violence situations, both spouses threaten each other." *Kanderskaya*, 11 F. Supp. 3d at 437.

As in *Kanderskaya*, Turner provided Donawa with information that presented a picture of a fraught domestic relationship, and "[t]hese situations of domestic violence and conflicting

7

accounts as to who is a perpetrator pose difficult problems for the police." *Id.* at 438. Plaintiff construes the information he provided to Donawa as calling Mele's credibility into question, but a reasonable officer could have looked at the information and seen a motive for the alleged assaults. *See Williams v. City of New York*, 683 Fed. Appx. 57, 59 (2d Cir. 2017) ("Even assuming the arresting officers were aware of the bitter relationship between Appellant and [complaining victim], information indicating a history of animosity between Appellant and [complaining victim] supplied evidence of motive supporting the existence of probable cause"); *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (contentious history between the plaintiff and complaining victim was evidence supporting probable cause, not a reason to doubt the complaining victim); *Romney*, 2017 WL 1317011, at *7 (ongoing custody dispute between complaining victim and plaintiff did not sufficiently call victim's credibility into question to vitiate probable cause).

The information plaintiff provided to Donawa made it clear that this relationship had reached a level of violence given plaintiff's claim that Mele threw a brick through his car window. The text messages from the dates surrounding the alleged assault do not mention any assault, but they do demonstrate two people with an acrimonious relationship. The same is true as to the audio recordings of the telephone conversations between plaintiff and Mele, which also portray a combustible relationship. As to the photographs that allegedly show no injuries to Mele, they are small and grainy. Moreover, though these photographs were sent as text messages on the dates surrounding the alleged assault, there is no way the officer could have known (other than relying on plaintiff's assertions) when these photographs were actually taken. An officer of reasonable caution could have looked at this information as not only failing to call Mele's complaint into question, but actually bolstering her complaint.

Plaintiff also argues that the text messages and audio recordings demonstrate that Mele threatened to file a false rape allegation with the police in retaliation for plaintiff filing a complaint against Mele.[1] Though plaintiff interprets Mele's statements as threatening to file a false rape charge, a reasonable officer could draw a different conclusion. For example, the text message plaintiff references states, "[You] raped me the other day now [I'm] going to the police station." Mele sent this text message two days after she alleges that plaintiff assaulted her, and the text message comes in the course of a contentious exchange between plaintiff and Mele.[2] *See Donovan v. Briggs*, 250 F. Supp. 2d 242, 246 (W.D.N.Y. 2003) (probable cause existed for a rape arrest even where alleged rapist—the father of the victim—produced a "to-do" list written by the victim stating, "Frame dad for Abuse (sexual or physical?)").

Plaintiff additionally points to phone records, which he showed to Donawa, that, he argues, demonstrate he did not call Mele. In *Kanderskaya*, the court rejected plaintiff's bare denial that she did not make threatening phone calls. That plaintiff here provided his personal phone records does little to distinguish this situation. Plaintiff may have made the call from any other phone that he had at his disposal—a work phone, a home phone, another person's phone, or a public payphone. Donawa did not have to "explore and eliminate every theoretically plausible claim of innocence or prove plaintiff's version wrong before arresting him, even if an investigation might

---

[1] I note that Mele's rape allegation made in 2015 against plaintiff has no bearing on this litigation. Since it post-dates plaintiff's two arrests, it is not something that either Donawa or Handley could have considered in arresting him.

[2] Similar reasoning applies to Turner's argument that Mele's complaint was in retaliation for the complaint he filed with the police regarding her breaking his car window with a brick. Turner views this as a retaliatory complaint. However, another reasonable explanation is that, once Turner involved the police in his dispute with Mele, she was more willing to do the same.

have cast doubt upon the basis for the arrest." *Kilburn v. Village of Saranac Lake*, 413 Fed. Appx. 363, 363-64 (2d Cir. 2011).

Lastly, as to plaintiff's statement that Donawa told plaintiff he did not believe Mele, such a statement is irrelevant. "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *see Whren v. United States*, 517 U.S. 806, 813 (1996). "Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Devenpeck*, 543 U.S. at 153 (internal quotation omitted). As the Second Circuit has stated:

> The courts are not bound, in their determination of whether probable cause existed, by the beliefs of the arresting officer . . . The facts as they appeared to the arresting officer must be judged against an objective standard. This is necessary because if the subjective good faith of the officer that he had probable cause was sufficient to satisfy constitutional requirements the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects, only in the discretion of the police. It is no less necessary when a mistake on the part of a police officer is arguably beneficial to the accused. The proper test is whether the facts available to the officers at the moment of arrest would warrant a man of reasonable caution in the belief that an offense has been committed.

*United States v. Tramontana*, 460 F.2d 464, 466-67 (2d Cir. 1972) (internal quotations omitted).[3]

It is certainly true that the scenario presented to Donawa was a muddled one. However, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of

---

[3] For the same reason, I reject plaintiff's argument that Donawa's true motivation in arresting plaintiff was to curry favor with Mele in an effort to engage in "sexual improprieties." Pl. Mem. at 4. Donawa's subjective motivation for the arrest has no bearing on whether probable cause existed.

wrongdoing, and not to finally determine guilt through a weighing of evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

Looking at the totality of the circumstances confronting Donawa, he was faced with a complaining victim who alleged that plaintiff slammed her head against a car, strangled her nearly to a state of unconsciousness, and made a threatening phone call where he said he would kill Mele if he could get away with it. The information plaintiff presented to Donawa did not sufficiently dispel Mele's credibility to vitiate probable cause. As the Second Circuit has noted, domestic violence complaints present "extraordinarily difficult judgment decisions that law enforcement officers must make." *Lee v. Sandberg*, 136 F.3d 94, 104 (2d Cir. 1997).

At the very least, even assuming Donawa lacked probable cause to arrest plaintiff, Donawa would nonetheless be entitled to qualified immunity because there was arguable probable cause to arrest plaintiff in that officers of reasonable competence could disagree on whether probable cause existed here. "In a false arrest case, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was arguable probable cause to arrest. Arguable probable cause exists if either (1) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Guerrero v. Scarazzini*, 274 Fed. Appx. 11, 12 (2d Cir. 2008). "[A]n arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed . . . [the] inquiry is . . . whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). This is particularly so when, as here, "the officer is put in the middle of a heated and potentially volatile

familial dispute." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 204 (E.D.N.Y. 2010); *see Lee*, 136 F.3d at 104-05 (finding officers entitled to qualified immunity where wife alleged husband assaulted her and other factors suggested wife's statements were not incredible).

Accordingly, taking the undisputed historical facts into consideration and resolving any disputed facts in plaintiff's favor, I conclude that Donawa had probable cause to arrest plaintiff, or at a minimum, arguable probable cause. Therefore, his false arrest claim against Donawa is dismissed.

### 2. May 28, 2014 Arrest

On May 14, 2014, Mele filed a complaint at the 75th precinct indicating that plaintiff violated an outstanding order of protection. Mele told Detective Handley that plaintiff was following her in his vehicle, that he shouted at her from his car, honked his horn at her, and called her on the phone stating, "I got you." Mele's complaint provided Handley with probable cause because, *inter alia*, the order of protection explicitly forbade plaintiff from harassing Mele and contacting her by telephone. Therefore, unless Handley knew of circumstances that called Mele's credibility into question, Handley was justified in arresting plaintiff.

Plaintiff again points to numerous pieces of information that he provided to Handley that he argues called Mele's credibility into question. As an initial matter, that Handley knew that another officer in his precinct, Detective Powell, had arrested Mele for her conduct on May 14, 2014 for violating the order of protection against her does not foreclose Turner from also having violated the order of protection against him. Plaintiff also showed Handley a video of the incident at issue, which depicts him sitting in his car filming Mele who is standing on the street outside of his car. Plaintiff argues that the video calls Mele's credibility into question because it does not show plaintiff honking his horn, following Mele, or calling her, which were the actions that formed

the basis of her complaint. However, this video does not necessarily call into question Mele's versions of the events. As Handley testified in his deposition, the video does not show what occurred before or after the recording began. In fact, in his deposition, plaintiff states that Mele was "stalking" him for "three, four minutes." Turner Dep. at 123. However, the video provided to Handley was only 23 seconds long. What the video definitively shows is plaintiff in his car in close proximity to Mele. Again, plaintiff characterizes this information as exculpatory. However, a reasonable officer could look at this information and see plaintiff in a car, with a phone, close to Mele, which coincides with Mele's account that plaintiff honked at her from his car and called her on the phone.

As articulated above, Handley was not required to "explore and eliminate every theoretically plausible claim of innocence or prove plaintiff's version wrong before arresting him, even if an investigation might have cast doubt upon the basis for the arrest." *Killburn*, 413 Fed. Appx. at 363-64. Handley was presented with potentially conflicting accounts of the events that took place on May 14, and Handley did not have to resolve the conflicts before making an arrest. *Wieder v. City of New York*, 569 Fed. Appx. 28, 29 (2d Cir. 2014) ("Though there were conflicting accounts of the physical altercation, 'we have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee.'") (quoting *Curley*, 268 F.3d at 70).[4]

---

[4] Plaintiff argues that Handley "lied" at his deposition regarding plaintiff having provided him with exculpatory evidence (despite an audio recording indicating otherwise) and this lie shows that he "had no probable cause to arrest plaintiff." Pl. Mem. at 20. Whether probable cause existed is an objective inquiry. *See Whren*, 517 U.S. at 813. Assuming Handley had the allegedly exculpatory information, there would nonetheless have been probable cause to arrest plaintiff. As to plaintiff's contention that Handley lied in his deposition, I note that Handley testified, "I do not remember speaking with [plaintiff]," "I do not remember seeing a video in connection with this case," and "I do not remember [plaintiff] telling me about a video." Handley Dep. at 24, 72, 90. When confronted with the audio recording indicating otherwise, Handley stated, "I honestly don't

Similar to his November arrest, plaintiff points to other pieces of evidence, besides the video, that he deems exculpatory. However, as with the November arrest, Handley was also presented with a clearly tumultuous domestic relationship. Plaintiff told Handley that Mele had been distributing flyers disparaging him at his place of work. Yes, this may show there was probable cause to arrest Mele for violating her order of protection (which Officer Powell did), but a reasonable officer could have seen Mele's actions as a motive for plaintiff to honk at her, follow her with his car, and threaten her. As to the phone records that plaintiff argues demonstrate he did not call Mele, the same logic applies as did in the November arrest. Plaintiff states that he was at his place of work and identified at least one other person who witnessed the occurrence. Therefore, plaintiff's personal phone records do not sufficiently call Mele's credibility into question; he could have called her from any number of other telephones—such as a work telephone or the witness's telephone. And, as in *Kanderskaya*, Handley did not have to interview the alleged eyewitness plaintiff identified. An officer simply does not have to conduct a full investigation and prove plaintiff's version of the events wrong before making an arrest.

Mele complained that plaintiff followed her in his car, honked at her, and called her on the phone. Plaintiff showed Handley a video of him, in his car, videotaping Mele with his phone. The information provided to Handley does not sufficiently impugn Mele's credibility to vitiate probable cause.

Lastly, to the extent Handley stated that a judge would ultimately "throw the case against plaintiff out," an arresting officer "need not . . . believe with certainty that the arrestee will be successfully prosecuted" before making an arrest. *Curley*, 268 F.3d at 70; *see Donovan* 250 F.

---

remember that phone conversation . . . [but] it sounds like me, yes, it does." *Id.* at 94. This testimony does not necessarily support plaintiff's unequivocal assertion that Handley lied about his interaction with Turner.

Supp. at 246 (finding probable cause despite arresting officer telling arrestee "from what I hear I don't think you have anything to worry about."). "[T]he probable cause standard is far below that of reasonable doubt," and an arrest is justified once that lesser standard has been satisfied. *Husbands ex rel. Forde v. City of New York*, 335 Fed. Appx. 124, 127 (2d Cir. 2009).

Because Handley had probable cause to arrest plaintiff, plaintiff's false arrest claim against Handley is dismissed.

### C.    Malicious Prosecution

In order to prevail on a claim for malicious prosecution, a plaintiff must demonstrate that: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) there was an absence of probable cause for the proceeding; (4) the defendant was motivated by actual malice; and (5) there was a post-arraignment deprivation of liberty. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). "The existence of probable cause is a complete defense to a claim of malicious prosecution." *Delamota v. City of New York*, 683 Fed. Appx. 65, 66 (2d Cir. 2017). Since there was probable cause for plaintiff's arrest even in light of the information plaintiff provided to the officers, a malicious prosecution claim is foreclosed. For purposes of a malicious prosecution claim, it is irrelevant whether the officers provided this information to the District Attorney, or whether, as plaintiff alleges, they failed to do so. Even if they had provided it, probable cause would have continued to exist. This is not a situation where there was probable cause at one point, but that probable cause then dissipated upon the discovery of exculpatory information. Here, at all points from plaintiff's arrest onward, there was probable cause even taking the allegedly exculpatory evidence into account.[5]

---

[5]    A violation of *Brady v. Maryland*, 373 U.S. 83 (1963), can form the basis of a Section 1983 claim, but no such claim can exist when "the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Lewis v.*

15

### D. *Monell* Liability

To establish a claim pursuant to *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978), a plaintiff must demonstrate an underlying violation of a constitutionally protected right and a municipal policy or custom that caused the violation. Without an underlying constitutional violation, there can be no *Monell* liability. *See Sullivan v. City of New York*, 690 Fed. Appx. 63, 63 (2d Cir. 2017). Given my conclusion that there was no false arrest or malicious prosecution, there is no underlying violation to support *Monell* liability, and defendants' motion for summary judgment as to the City is granted. Moreover, in moving for summary judgment, defendants argued plaintiff presented no facts whatsoever to conclude there was an official policy or custom pursuant to which the officers acted. Plaintiff failed to oppose this portion of defendants' motion and did not highlight any facts that would support the existence of such a policy or custom. This serves as an independent ground to grant the City summary judgment on plaintiff's *Monell* claim. *See Bellegar de Dussuau v. Blockbuster, Inc.*, 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006).

### E. Claims Against the NYPD

Plaintiff also brings claims against the NYPD. Since the NYPD is a non-suable entity, defendants' summary judgment motion is granted as to the NYPD. *See Johnson v. New York City Police Dept.*, 651 Fed. Appx. 58, 60 (2d Cir. 2016).

## III. Conclusion

Defendants' summary judgment motion is granted and the case is dismissed as to the City, the NYPD, Detective Thomas Handley, and Detective Daru Donawa. The Clerk of Court is

---

*Connecticut Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation omitted). Here, Turner himself provided all of the allegedly exculpatory information to the officers.

directed to enter judgment in favor of these defendants. Plaintiff is directed to provide a status update to the court regarding the posture of the case as it relates to defendant Mele by October 20, 2017.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

Dated: October 5, 2017
　　　 Brooklyn, New York